# Treinen Law Office

500 Tijeras Ave NW
Albuquerque New Mexico 87102
(505) 247-1980
(505) 843-7129 (fax)
robtreinen@treinenlawoffice.com

December 5, 2011

**Via Fax Only to 842-1333**
Alan L. Wainwright
Alan L. Wainwright, PA
800 Lomas Blvd. NW
Albuquerque, NM 87102

    Re:    *Montano v. DriveTime Car Sales Company, LLC, et al*, No. CV-11-339 (San Miguel County District Court)

Dear Mr. Wainwright:

Plaintiffs would dismiss their lawsuit and release Defendants in exchange for:
1. Payment of $475,000;
2. Extinguishment of any alleged obligation towards the finance contract for the Durango with Plaintiffs making the Durango available for pick up at Defendants' expense; and
3. Defendants' agreement that they will only sell the Durango via a dealer only auto auction with full disclosure.

Plaintiffs will not agree to any indemnity provision. They will not agree to any confidentiality provision unless it is limited to the terms of the agreement, with express exceptions for disclosure to tax authorities and tax preparers, in order to respond to court order (including subpoena) and in order to enforce the settlement.

This lawsuit involves the sale of an undisclosed wrecked vehicle where DriveTime failed to disclose the significant prior damage and safety defects to Plaintiffs. As has been revealed by the documents produced by Defendants after Plaintiffs were forced to file a motion to compel, DriveTime's expert has confirmed the clear evidence of the Durango's prior accident. Plaintiffs' expert will testify, with reference to photographs from his inspection (DriveTime apparently directed its expert not to take photographs), that given the many tell-tale signs of wreck damage and poor repairs, no person competent to inspect used cars for resale to the public could have inspected the Durango and not noticed that it had been in a prior accident. The accident also appears on the Carfax report for the Durango.

This lawsuit is centered on facts that expose Defendants to much greater liability that is present in most undisclosed wrecked vehicle lawsuits. Here, the vehicle was sold with a serious safety defect. The driver side airbag was not functional due to shoddy repairs to the Durango's electrical system. The fact that DriveTime sold a vehicle that it knew or should have known had a safety defect greatly increases Defendants' exposure to a significant punitive damages award.

Problems with the Durango's electrical system also caused a drain on the battery. This defect

*Exhibit A*

resulted in Plaintiffs having to jump start the Durango whenever it was parked overnight. DriveTime was aware of this defect. The Durango had to be jumped for Plaintiffs' test drive but DriveTime lied about the cause of the problem. Moreover, DriveTime's call log shows that Plaintiffs repeatedly informed DriveTime that they were trying to repair this problem, but DriveTime chose to ignore this fact and proceed very aggressively with badgering Plaintiffs for payments. These facts greatly increase Defendants' exposure to a significant award for emotional distress type damages.

The evidence at trial will show that DriveTime is in the business of selling wrecked cars with no disclosure. For years, DriveTime has been able to get away with this business model because of an arbitration clause that kept claims against it out of court – and hidden from the public eye – and because of quick releases it would obtain from consumers who would complain once they discovered that they were sold a wrecked vehicle. Plaintiffs intend to present evidence of this pattern and practice through documents as well as through the testimony of other DriveTime customers. Under New Mexico law, this testimony is not only plainly admissible but is "highly relevant" in auto fraud trials. *Salmeron v. Highland Ford Sales, Inc.*, 220 F.R.D. 667, 670 (D. N.M. 2003). The jury will be shown that Defendants prey on the poor and uninformed and have made a fortune doing so. These facts further compel a significant punitive damages award.

Defendants' defense in this lawsuit will likely be "it was a mistake." DriveTime is expected to claim that it was reasonable that it "missed" the damage and repairs on the Durango when it inspected the Durango. Plaintiffs expect that discovery into other such "mistakes" will substantially weaken this defense. Plaintiffs also note that DriveTime is still withholding the documents that show what it knew about the Durango when it purchased the Durango. Moreover, given the findings of Defendants' own expert, it will be very difficult for Defendants to credibly present expert testimony to rebut the testimony of Plaintiffs' expert concerning the obvious nature – to a trained professional – of the Durango's prior wreck damage and poor repairs.

Defendants may attempt to hide behind the damage limitation provisions in their contract. These provisions are not enforceable under New Mexico law. *Golden Cone Concepts, Inc. v. Villa Linda Mall Ltd.*, 113 N.M. 9, 820 P.2d 1323 (N.M. 1991). *See also Shotts v. OP Winter Haven, Inc.*, No. SC08-1774, 2011 Fla. LEXIS 2764, 2011 WL 5864830 (Fla. Nov. 23, 2011). Moreover, these provisions demonstrate that DriveTime crafted a business model knowing that it would be facing lawsuits and that, rather than address its unlawful activity, Defendants chose to intimidate consumers, through these unenforceable contract provisions, to scare them out of filing lawsuits against Defendants.

Defendants may also attempt to argue that the AutoCheck report for the Durango, which does not report the prior accident, excuses its failure to disclose the Durango's accident, repairs and safety defects. Plaintiffs expect, based on prior depositions, that AutoCheck will testify that its reports are not good sources for indicators of prior accidents and that it includes disclaimers in its reports in light of this fact. Plaintitffs' expert will testify that this fact is well known in the auto industry. Finally, to the extent that Defendants intend to rely on an AutoCheck defense, this defense will be undercut by the fact that DriveTime itself did not rely on AutoCheck. Rather, DriveTime did

2

its own inspection which, according to Plaintiffs' expert and Defendants' own expert, should have uncovered the many tell-tale signs of prior accident damage and poor repairs.

Defendants' conduct constitutes fraud. *See Salmeron v. Highlands Ford Sales, Inc.*, 271 F.Supp.2d 1314, 1319-20 (D. N.M. 2003). It also violates the New Mexico Unfair Practices Act, NMSA 1978 §§ 57-12-1 *et seq.* ("UPA"). *See* NMSA 1978 § 57-12-6 (if repair costs from prior accident are more than six percent of sales price, disclosure must be by affidavit); *Hale v. Basin Motor Company*, 110 N.M. 314, 795 P.2d 1006 (N.M. 1990) (UPA requires disclosure not just of frame or "chassis repair" but also of any "alternation" that a consumer would reasonably want disclosed prior to purchase). *See also* NMSA 1978 § 57-12-2(D)(14) ("using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive" constitutes an unlawful trade practice); *Smoot v. Physicians Life Insurance Company*, 2004 NMCA 27, 15, 135 N.M. 265, 269, 87 P.3d 545, 549 ("The UPA . . . imposes a duty to disclose material facts reasonably necessary to prevent any statements from being misleading"). It is undisputed that DriveTime did not provide Plaintiffs with the required affidavit documenting the Durango's prior damage and repairs. Nor did Defendants honestly explain the battery drain. Defendants' conduct is the sort of reprehensible conduct that will support a large punitive damages award. *See BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574 (1996) ("[p]erhaps the most important indicum of the reasonableness of a punitive damages award is the degree of reprehensibleness of the defendant's conduct"); *Aken v. Plains Electric Generation & Transmission Cooperative, Inc.*, 2002 NMSC 21, 21, 132 N.M. 401, 409, 49 P.3d 662, 670 (N.M. 2002) ("evidence of repeated engagement in prohibited conduct knowing or suspecting it is unlawful is relevant support for a substantial [punitive damages] award").

Emotional distress type damages are awardable under the UPA. The New Mexico Supreme Court in *Hale*, 110 N.M. at 321, 795 P.2d at 1013, stated that "[c]ertainly, high among the factors motivating legislatures to enact laws such as we are considering today is the frustration experienced by consumers having to run around to straighten out unfair or deceptive trade practices." The New Mexico Supreme Court recently emphasized that the UPA provides a primary building block of New Mexico's "fundamental policy" to ensure that consumers have broad and adequate redress for unfair and deceptive trade practices. *Fiser v. Dell Computer Corporation*, 2008 NMSC 46, 9-11, 144 N.M. 464, 467, 188 P.3d 1215, 1219-20 (N.M. 2008). New Mexico courts have time and time again affirmed the UPA should be given "the broadest possible application" in order to fulfill its consumer protection purpose. *See Ashlock v. Sunwest Bank of Roswell*, 107 N.M. 100, 102, 753 P.2d 346, 348 (N.M. 1988) (UPA should be interpreted to ensure "the protection of its broad application to innocent consumers"); *Lohman v. Daimler-Chrysler Corporation*, 2007 NMCA 100, 25, 142 N.M. 437, 442-43, 166 P.3d 1091, 1096-97 (N.M. Ct. App. 2007) *cert. denied* 142 N.M. 434, 166 P.3d 1088 (N.M. 2007) ("The remedial purpose of the [UPA], as a consumer protection measure, is also consistent with the broadest possible application."); *State ex rel Stratton v. Gurley Motor Company*, 105 N.M. 803, 808, 737 P.2d 1180, 1185 (N.M. Ct. App. 1987) (UPA is to be liberally interpreted to accomplish its consumer protection purpose and intent). In every auto fraud trial held in New Mexico state or federal court of which Plaintiffs' attorney is aware, where the plaintiff sought emotional distress type damages under the UPA, the Court instructed the jury on these damages and the jury returned with an award for these damages. *See e.g. Pedroza v. Lomas Auto Mall, Inc.*, No. 07-CV-591 (D. N.M.), Docket No. 464 (filed 5/27/09), Instruction No. 56, with the jury returning an award for such damages. *Id.* at Docket

3

No. 461 (filed 5/28/09), ¶ 36. *See also Brashears v. Sight 'N Sound Appliance Centers, Inc.*, 981 P.2d 1270, 1274 (Okla. Ct. App. 1999) ("inconvenience" damages can be awarded under Oklahoma Consumer Protection Act); *Roche v. Fireside Chrysler-Plymouth Mazda, Inc.*, 600 N.E.2d 1218, 1228 (Ill. Ct. App. 1992) (affirming award for "aggravation and inconvenience" under the Illinois Consumer Fraud Act).

Concerning the standard of proof for emotional distress damages, it is clear that the New Mexico standard mirrors the federal standard announced by the United States Supreme Court in *Carey v. Piphus*, 435 U.S. 247 (1978). The *Carey* standard of proof was expressly adopted by the New Mexico Court of Appeals in *Jacobs v. Meister*, 108 N.M. 488, 775 P.2d 254 (N.M. Ct. App. 1989) *cert. denied* 108 N.M. 582, 775 P.2d 1299 (1989). As pointed out by the *Jacobs* court, this standard is consistent with preexisting New Mexico case law on what is needed to prove up emotional distress damages. *Id.* at 495-96, 261-62. Accordingly, under New Mexico law, a plaintiff's specific testimony about his emotional distress is sufficient proof to uphold the damage award. *Sweitzer v. Sanchez*, 80 N.M. 408, 410-11, 456 P.2d 882, 884-85 (N.M. Ct. App. 1969). In short, Plaintiffs need not proffer medical testimony to obtain emotional distress type damages under the UPA. Their testimony alone is sufficient.

Plaintiffs' attorney is experienced in litigating auto fraud lawsuits. In *Mallon v. Keenan*, No. CV-03-1873 (Bernalillo County District Court), an auto dealer withheld the fact that the vehicle he sold to the plaintiff was a rebuilt wreck. The jury awarded $16,500 in actual damages and $76,000 in punitive damages. In *Pedroza v. Lomas Auto Mall, Inc.*, No. 07-CV-591 (D. N.M.), a small auto dealer withheld the fact that the vehicle he sold to the plaintiff was a theft recovery vehicle that had substantial repairs following recovery from the thieves. The jury awarded $17,000 in actual damages and $33,000 in punitive damages. This lawsuit differs from *Mallon* and *Pedroza* most markedly by the fact that Plaintiffs were not taking their chances at a small local dealership – like the plaintiffs in *Mallon* and *Pedroza* – but instead bought from DriveTime, a large franchise dealer. Plaintiffs believe this lawsuit exposes Defendants to much greater liability than what was realized in the *Mallon* and *Pedroza* lawsuits.

Plaintiffs' attorney is also experienced at obtaining significant awards of emotional distress damages and punitive damages. In *Yazzie v. Law Offices of Farrell & Seldin*, No. 10-CV-292 (D. N.M.), where the plaintiff was represented by undersigned counsel, the jury awarded $161,000 in damages, nearly all for emotional distress, and $1.1 million in punitive damages. The facts in *Yazzie* concerned a debt collector who persisted in trying to collect from a consumer despite clear notice that she did not owe the debt. The facts here are different but every bit as reprehensible. This lawsuit also has tremendous jury appeal.

Plaintiffs' attorney has also settled several major undisclosed wrecked vehicle lawsuits for over $100,000, including lawsuits where the claims were set to be resolved by an arbitrator. The fact that Defendants face a jury in Plaintiffs' hometown of Las Vegas, New Mexico, adds to Defendants' exposure.

With the *Mallon* and *Pedroza* lawsuits, and in every undisclosed wrecked vehicle arbitration where the plaintiff prevailed, the plaintiffs represented by Plaintiffs' counsel here also recovered

4

substantial attorney fees on top of the damages awarded at trial or arbitration, as is mandatory under the UPA. NMSA 1978 58-12-10(C) ("The court *shall* award attorney fees and costs to the party complaining of an unfair or deceptive trade practice . . . if he prevails") (emphasis added). *See also Jones v. General Motors Corporation*, 1998 NMCA 20, 25, 124 N.M. 606, 611, 953 N.M. 1104, 1109 (even though plaintiff only obtained UPA statutory damages "the attorneys' fees to be awarded in this case are not nominal; they should reflect the full amount of fees fairly and reasonably incurred by Plaintiff in securing an award under the UPA"); *Garcia v. Coffman*, 1997 NMCA 92, 44-48, 124 N.M. 12, 21-22, 946 P.2d 216, 225-26 (where UPA liability established, even where plaintiff elected to recover damages under another claim, plaintiff is entitled to a full award of attorney fees and costs under UPA). In *Mallon*, the fee award exceeded $50,000. In *Pedroza*, the attorney fees were resolved through settlement with multiple defendants, and, although the amount is confidential, it would not violate any agreement to state that the total attorney fees collected was more than double the fees collected in *Mallon*.

As this litigation progresses, it is likely that settlement in the range available now will not be possible. Please feel free to telephone me to discuss any of these issues. Thank you.

Truly yours,

Rob Treinen

RT/

cc: Anthony and Margaret Montano

5