STATE OF NEW MEXICO
COUNTY OF SAN MIGUEL
FOURTH JUDICIAL DISTRICT COURT

CUSTOMER SERVICE
JUL 14 2011

ANTHONY J. MONTANO; and
MARGARET A. MONTANO,
    Plaintiffs,

v.

D412CV2011-339

DRIVETIME CAR SALES COMPANY, LLC;
DT CREDIT COMPANY, LLC; and
FIDELITY AND DEPOSIT COMPANY OF
MARYLAND,
    Defendants.

## SUMMONS

To the above named Defendant: DT Credit Company, LLC
ADDRESS:_____

    You are required to serve upon Treinen Law Office an answer or motion in response to the Complaint which is attached to this summons within thirty (30) days after service of this Summons, upon you, exclusive of the day of service, and file a copy of your answer or motion with the court as provided in Rule 1-005 NMRA.

    If you fail to file a timely answer or motion, default judgment may be entered against you for the relief demanded in the complaint.

Attorney or Attorneys for Plaintiff(s):    Rob Treinen
                          Address:    Treinen Law Office
                                     500 Tijeras Ave NW
                                     Albuquerque, New Mexico 87102

    WITNESS the Honorable Matthew J. Sandoval, District Judge of said Court of the State of New Mexico, and the seal of the District Court of said County, on June 22, 2011

Fred A. Sena
CLERK OF THE DISTRICT COURT

By: Helen Tafoya
Deputy

NOTE: This summons does not require you to see, telephone or write to the District Judge of the Court at this time.
       It does require you or your attorney to file your legal defense to this case in writing with the Clerk of the District Court within 30 days after the summons is legally served on you. If you do not do this, the party suing may get a Judgment by default against you.

ENDORSED
Fourth Judicial District Court
San Miguel, Mora & Guadalupe

JUN 2 2 2011

Fred A. Sena
District Court Clerk
HJT
Deputy Clerk

STATE OF NEW MEXICO
COUNTY OF SAN MIGUEL
FOURTH JUDICIAL DISTRICT COURT

ANTHONY J. MONTANO; and
MARGARET A. MONTANO,

        Plaintiffs,

D412CV2011-339

Matthew J. Sandoval

v.

DRIVETIME CAR SALES COMPANY, LLC;
DT CREDIT COMPANY, LLC; and
FIDELITY AND DEPOSIT COMPANY OF
MARYLAND,

        Defendants.

## COMPLAINT FOR DAMAGES AND FOR
## INJUNCTIVE AND DECLARATORY RELIEF

1. Defendant DriveTime Car Sales Company, LLC sold Plaintiffs Anthony J. Montano and Margaret A. Montano a used 2004 Dodge Durango that had been in a prior accident, had been improperly repaired and was unsafe to drive, without disclosing these facts to Plaintiffs. The driver airbag is not functional. Moreover, there has been a constant drain on the electrical system, causing Plaintiffs to need frequent jumpstarts, resulting in loss of use and repair and towing costs.

### Parties

2. Plaintiffs Anthony J. Montano and Margaret A. Montano, husband and wife, reside in Las Vegas, New Mexico.

3. Defendant DriveTime Car Sales Company, LLC is an Arizona limited liability company and licensed auto dealer that conducts a used auto dealership in Albuquerque, New

Exhibit B-1

Mexico. DriveTime is a motor vehicle dealer within the meaning of the New Mexico Motor Vehicle Dealers Franchising Act, NMSA 1978 § 57-16-1 *et seq.* ("MVDFA").

4. Defendant DT Credit Corporation, LLC is an Arizona limited liability company that purchases and services finance contracts for vehicles sold by its affiliate DriveTime, including vehicles sold in New Mexico to New Mexicans.

5. Defendant Fidelity and Deposit Company of Maryland ("FADCOM") is a foreign corporation that provides auto dealer surety bonds for New Mexico auto dealers. During the relevant time period, FADCOM provided the surety bond necessary to license DriveTime as an auto dealer, pursuant to NMSA 1978 § 66-4-7.

## Facts

6. The used 2004 Dodge Durango that DriveTime sold to Plaintiffs had been in an at least one accident prior to the sale to Plaintiffs.

7. As a result of the accident, the Durango sustained substantial damage, with repair costs that exceed $4,000.

8. The repairs that resulted from the accident are of poor quality.

9. The driver airbag is not been functional.

10. There has been a constant drain on the electrical system during the entire time Plaintiffs have owned the Durango.

11. In August 2008, Plaintiffs visited DriveTime's lot in Albuquerque, New Mexico, in hopes of purchasing a used vehicle for Ms. Montano.

12. The salesperson showed Plaintiffs the 2004 Dodge Durango.

13. The salesperson told Plaintiffs that the Durango that had undergone an extensive inspection.

14. The salesperson showed Plaintiffs an AutoCheck report and told them that this report proved that the Durango had never been in a prior accident.

15. AutoCheck maintains a database of information concerning vehicles, such as title history and prior reported odometer readings, that it and its agents collect on vehicles. It sells reports for particular vehicles to dealerships and consumers.

16. AutoCheck does not claim to have comprehensive information concerning prior accidents and its reports contain disclaimers to this effect.

17. Carfax maintains a database similar to AutoCheck and, like AutoCheck, sells reports for particular vehicles to dealerships and consumers.

18. Although the AutoCheck report for the Durango does not report any indications of a prior accident, the Carfax report for the Durango reports an accident in September 2007.

19. DriveTime did not provide Plaintiffs with a copy of the Carfax report for the Durango.

20. In order for Plaintiffs to test drive the Durango, DriveTime had to jump start the Durango.

21. DriveTime assured Plaintiffs that the Durango had no problems other than a dead battery.

22. Based on DriveTime's representations, Plaintiffs decided to purchase the Durango.

23. DriveTime charged a sales price of $15,062.44 for the Durango, with Plaintiffs to make a $500 down payment.

24. Plaintiffs made the $500 down payment.

25. DriveTime financed the sale of the Durango via a finance contract at 24.9 percent Annual Percentage Rate.

26. Simultaneous to or shortly after the sale of the Durango to Plaintiffs, DriveTime sold the Durango finance contract to DT Credit, DriveTime's in-house finance company.

27. DT Credit purchased the Durango finance contract consistent with this term that appears on the face of the contract:

   ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF, RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

28. This contract term is required by federal law to be part of the Durango finance contract. *See* 16 C.F.R. § 433.

29. DT Credit has received monies that Plaintiffs have paid towards the Durango finance contract.

30. DriveTime had inspected the Durango prior to purchasing it in order to determine the amount to pay for it or in order to determine the amount to provide for a trade allowance.

31. DriveTime inspected the Durango a second time before placing it on its lot for sale.

32. The wreck damage and repairs to the Durango are obvious to a person who is experienced in buying used vehicles for resale and to any person competent to inspect used vehicles for signs of prior accident damage and repairs.

33. At the time of the sale to Plaintiffs, DriveTime knew or should have known about the Durango's prior accident damage, shoddy repairs and unsafe condition. DriveTime deliberately hid these facts from Plaintiffs. DriveTime did so in order to sell the Durango to Plaintiffs and to charge them a price that exceeded the fair market value of the Durango.

34. At no time prior to the sale did DriveTime disclose to Plaintiffs that the Durango had been wrecked and repaired and was unsafe, either orally or in writing.

35. Plaintiffs would not have purchased the Durango if they had known about the prior accident, resulting damage, poor repairs or unsafe condition.

36. The cost of the alteration or chassis repairs due to the wreck damage on the Durango exceeds six percent of the sales price to Plaintiffs.

37. DriveTime failed to provide Plaintiffs with an affidavit in which it states that the alterations to the Durango were due to wreck damage.

38. DriveTime required Plaintiffs to sign an Arbitration Agreement as a condition of purchasing the Durango.

39. This Arbitration Agreement is a preprinted form contract prepared by DriveTime and DT Credit.

40. DriveTime offers the Arbitration Agreement on a take it or leave it basis.

41. DriveTime enjoyed superior bargaining power over Plaintiffs and other consumers concerning the Arbitration Agreement.

42. The Arbitration Agreement contains a class action ban that is contrary to New Mexico public policy. *See Fiser v. Dell Computer Corp.*, 2008-NMSC-046, 144 N.M. 464, 188 P.3d 1215 (N.M. 2008).

43. The Arbitration Agreement is one sided in that it exempts from arbitration any of the claims that DriveTime or DT Credit would want to pursue – claims for "repossession, replevin, judicial foreclosure or any other prejudgment or provisional remedy relating to any collateral or security for debts owed . . ." – but requires a consumer to arbitrate any claim that the consumer would want to pursue, a structure that is contrary to New Mexico public policy. *See Cordova v. World Finance Corporation of New Mexico*, 2009-NMSC-021, 146 N.M. 256, 208 P.3d 901 (N.M. 2009

44. The Arbitration Agreement mandates a one-sided appeal provision – appeals are allowed automatically for any award that exceeds $50,000 – which is contrary to New Mexico public policy. *See Padilla v. State Farm Mutual Auto. Ins. Co.*, 2003-NMSC-011, 133 N.M. 661, 68 P.3d 901 (N.M. 2003).

45. The Arbitration Agreement provides that the "arbitrator shall not apply Federal or any state rules of civil procedure or evidence."

46. The Arbitration Agreement provides that any "award shall be kept confidential" other than to enter the award in a court for enforcement purposes.

47. DriveTime and DT Credit require arbitrators to comply with all the above recited unfair terms and refuse to use arbitrators that do not enforce these terms.

48. From the time that Plaintiff purchased the Durango until the present, Plaintiffs had to repeatedly jumpstart the Durango.

49. Plaintiffs complained to DriveTime about this problem, but DriveTime refused to fix it.

50. Plaintiffs repeatedly tried to fix this problem at their own expense, including the purchase of new batteries and other parts.

51. Plaintiffs were on occasion stranded because of this problem and, as a result, had to pay towing costs.

52. Eventually, in July 2010, Plaintiffs were told by Lithia Dodge of Santa Fe that there was some sort of problem with the airbag wire harness.

53. When Plaintiffs learned this information, they again asked DriveTime to perform repairs, but DriveTime again refused.

54. Plaintiffs also asked DriveTime to accept return of the Durango and refund the money that they had paid towards it or accept the Durango in trade for another vehicle, but DriveTime also refused this request for resolution.

55. Because of the problem with starting the Durango after it sat for a short period of time, Plaintiffs had to limit their use of the Durango.

56. In 2011, the New Mexico Attorney General, in response to a complaint submitted by Plaintiffs, investigated DriveTime's sale of the Durango to Plaintiffs, including an investigation into the history and condition of the Durango.

57. Despite the best efforts of the Attorney General, DriveTime refused to provide the recommended resolution to Plaintiffs.

58. Instead, DriveTime made attempts to repossess the Durango.

59. DriveTime engages in a pattern and practice of selling wrecked vehicles without disclosing that fact to its customers.

60. An award of punitive damages is appropriate to deter future similar conduct by DriveTime and other auto dealers.

61. Companies that issue New Mexico auto dealer surety bonds – here, FADCOM – are liable for any actual damages for fraud awarded against their principal dealers – here, DriveTime. NMSA 1978 § 66-4-7(B) ("bond shall be payable . . . of any loss, damage and expense sustained by the purchaser or his vendees, or both, by reason of . . . any fraudulent misrepresentations"). *See also McAlpine v. Zangara Dodge, Inc.*, 2008 NMCA 64, 144 N.M. 90, 183 P.3d 975 (N.M. Ct. App. 2008).

62. Companies that issue New Mexico auto dealer surety bonds – here, FADCOM – are liable for any attorney fees and costs expended by a consumer in prosecuting a fraud claim

against their principal dealers – here, DriveTime. *Yoakum v. Western Casualty and Surety Company*, 75 N.M. 532-33, 531, 407 P.2d 367, 369 (N.M. 1965).

63. As a result of DriveTime's actions and omissions, Plaintiffs have suffered actual damages, including:

   a. the difference between the fair market value of the Durango at the time of sale and the amount that they paid;

   b. repair costs;

   c. towing costs;

   d. loss of use;

   e. out of pocket expenses;

   f. lost time;

   g. humiliation and embarrassment; and

   h. aggravation and frustration.

### First Claim for Relief: Fraud

64. DriveTime induced Plaintiffs to purchase the Durango by affirmative misstatements and by omissions of material facts, including:

   a. stating that the AutoCheck report proved that the Durango had never been in an accident;

   b. stating that the Durango had no problems other than a dead battery;

   c. failing to disclose that the Durango had been in a prior accident;

   d. failing to disclose that the Durango had been repaired as a result of the prior accident;

   e. failing to disclose that the repairs are of poor quality;

    f.    failing to disclose that the driver airbag is not functional;

    g.    failing to disclose that there is a constant drain on the electrical system; and

    h.    failing to disclose that the Durango is unsafe.

65. DriveTime knew that its affirmative misstatements were false, or it made the misstatements recklessly, or it had no reasonable grounds for believing the misstatements were true.

66. DriveTime had a duty to disclose to Plaintiffs that the Durango had been in a prior accident, had been repaired shoddily and was unsafe.

67. DriveTime knew that its omissions were material and important.

68. DriveTime intended to deceive Plaintiffs and intended that they would rely upon its misstatements, which they did, to their detriment, suffering damages.

69. Plaintiffs are entitled to recover actual and punitive damages against DriveTime.

70. FADCOM -- as the company that issued DriveTime's auto dealer surety bond -- is liable for all actual damages awarded due to DriveTime's fraud and all attorney fees and costs accrued by Plaintiffs in pursuing their fraud claim.

### Second Claim for Relief: Violations of the Unfair Practices Act

71. DriveTime's sale of the Durango occurred in the regular course of its trade or commerce.

72. DriveTime's actions and omissions constitute unfair trade practices, within the meaning of the New Mexico Unfair Practices Act, NMSA 1978 §§ 57-12-1 *et seq.* ("UPA"), including NMSA 1978 § 57-12-2(D) generally and NMSA 1978 §§ 57-12-2(D)(14), (15) and (17) and 57-12-6 specifically.

73. DriveTime willfully engaged in these unlawful trade practices.

74. Plaintiffs are entitled to recover actual or statutory damages, trebled, plus attorney fees and costs, against DriveTime.

### Third Claim for Relief: Violations of the Motor Vehicle Dealers Franchising Act

75. DriveTime's actions and omissions willfully defrauded Plaintiffs within the meaning of the MVDFA. *See* NMSA 1978 § 57-16-4(C).

76. DriveTime acted maliciously.

77. Plaintiffs are entitled to recover actual damages and punitive damages not to exceed three times the actual damages, plus attorney fees and costs, against DriveTime.

### Fourth Claim for Relief: Unconscionability of the Arbitration Agreement

78. Because of the many unfair terms of the Arbitration Agreement, the Arbitration Agreement is contrary to New Mexico public policy, unconscionable and unenforceable.

### Fifth Claim for Relief: Equitable and Injunctive Relief

79. Injunctive relief enjoining DriveTime and DT Credit from attempting to enforce the Arbitration Agreement would be consistent with reasonably well established standards of fairness and equity.

80. The character of the interest to be protected via the requested injunctive relief is substantial and important.

81. Plaintiffs will suffer harm if the requested injunctive relief is not granted as other remedies will not serve to protect the interests that would be protected by the requested injunctive relief.

82. Plaintiffs have not engaged in undue delay in bringing this lawsuit.

83. Plaintiffs have not engaged in misconduct relative to the requested injunctive relief.

84. The requested injunctive relief would not unfairly harm the interests of third parties.

85. The requested injunctive relief is practicable and enforceable.

86. The balance of the hardship that the requested injunctive relief would visit on DriveTime and DT Credit, as compared to the hardship that Plaintiffs would suffer if the requested injunctive relief is not granted, weighs in the favor of granting the injunctive relief.

87. Plaintiffs are entitled to the injunctive relief that they request in this lawsuit.

## Request for Relief

Plaintiffs request that the Court award:

A. Injunctive relief enjoining DriveTime and DT Credit from attempting to enforce the Arbitration Agreement;

B. Declaratory relief that the Arbitration Agreement is contrary to New Mexico public policy, unconscionable and unenforceable;

C. Declaratory relief that DT Credit is liable for all damages awarded against DriveTime, up to the amount paid towards the Durango finance contract, per the terms of the finance contract and by operation of federal law;

D. Declaratory relief that FADCOM – as the company that issued DriveTime's auto dealer surety bond – is liable for all actual damages awarded due to DriveTime's fraud and all attorney fees and costs accrued by Plaintiffs in pursuing their fraud claim;

E. Actual and punitive damages, for fraud, against DriveTime;

F. Actual or statutory damages, trebled, for violations of the UPA, against DriveTime;

G. Actual and punitive damages, not to exceed three times the amount of actual damages, for violations of the MVDFA, against DriveTime;

H. Attorney fees and costs;

I. Such other relief as the Court deems just and proper.

Respectfully submitted:

TREINEN LAW OFFICE

_____
ROB TREINEN
500 Tijeras Ave NW
Albuquerque, New Mexico 87102
(505) 247-1980
(505) 843-7129 (fax)

STATE OF NEW MEXICO
COUNTY OF SAN MIGUEL
FOURTH JUDICIAL DISTRICT COURT

ANTHONY J. MONTANO; and
MARGARET A. MONTANO,

        Plaintiffs,

v.

DRIVETIME CAR SALES COMPANY, LLC;
DT CREDIT COMPANY, LLC; and
FIDELITY AND DEPOSIT COMPANY OF
MARYLAND,

        Defendants.

ENDORSED
Fourth Judicial District Court
San Miguel, Mora & Guadalupe

JUN 2 2 2011

Fred A. Sena
District Court Clerk
HJT
Deputy Clerk

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by a jury of six (6) persons on all issues so triable, and deposits herewith the requisite fee with the Clerk of the Court.

Respectfully submitted:

TREINEN LAW OFFICE

_____
ROB TREINEN
500 Tijeras Ave NW
Albuquerque, New Mexico 87102
(505) 247-1980
(505) 843-7129 (fax)